David Wade v. Deb Timmerman-Cooper. Arguments not to exceed 15 minutes per side. Mr. Worlinger for the appellant. May it please the Court. Eric Worlinger, Petitioner David Wade. Your Honor, I'd like to assert two minutes for rebuttal. Now, Your Honor, at its core, this case is about the basic ground rules set by the Constitution to ensure that all criminal defendants, both the guilty and the innocent, receive a fair trial. Was it fair for the State to argue that Mr. Wade committed kidnapping at gunpoint after a previous jury in this case acquitted him of possessing a gun? In the answer to that question, Your Honor, says no for two reasons. First, due process clause forbade the State from asserting that Mr. Wade threatened the victim with a gun in order to establish force, which is an essential element of the crime of kidnapping in Ohio. Force is an essential element, but having a gun is not an essential element, right? That is correct, Your Honor. The statutory definition of force is broader than the possession of a weapon. But I think that goes right into the question of what precisely Ashby Swinson says. And on that point, Your Honor, I think Ash itself is rather clear that the basic question to be asked is whether or not the second jury is being asked to come to a conclusion directly contrary to that of the first. On an element or on evidence? On evidence, Your Honor. It could be either. Well, doesn't Dowling contradict the evidence theory? I don't think it does, Your Honor. Dowling doesn't change Ash in any way. Dowling is an exception to Ash. There, the court was dealing with a very specific instance of a defendant trying to argue that a prior conviction or that Ash blocked a prior conviction coming in as oral for the evidence to substantiate a collateral issue there being an identity. And the court held that that was not – that was not the case. Here, on the other hand, the State has offered the firearm test… I'll quote Dowling. Dowling says that in Clittle, the criminal case does not preclude the government from re-litigating an issue when it is presented as subsequent action covered by a lower standard of proof. So what we're talking about here is we're not asking elements of the crime. We're talking about different ways to prove elements of the crime, right? Isn't that a fair way of characterizing what's going on? I'm not sure I would agree with that, Your Honor. I think what's going on here is – I think the question that we need to ask under Ash is in order to find Mr. Wade guilty of kidnapping, beyond a reasonable doubt, what did this jury have to find? And based upon the presentation that the State gave to the second jury, it's clear that… Did the first trial end in a situation where you had kidnapping and rape in a Clittle firearm trial? It did, Your Honor. So does that show reasonable people could find Force without use of a gun? I don't think that's necessarily the case for two reasons, Judge Sutton. First, the firearm evidence was properly before that jury. And if you go back and look at the 2003 trial transcript, Force was basically the only theory that the State offered. There was no testimony as to… Sorry, you said Force was the only theory. I apologize. The gun? Yes, thank you, Judge Boggs. The gun was the only theory that the State offered to prove Force. There was no testimony that Mr. Wade's size or his positioning within the apartment somehow intimidated the victim into compliance. So given that, I think to the extent that we have a jury verdict that undisputedly says that Mr. Wade didn't have a gun. But let me ask you that because the Ohio court seemed to have said that several times. But as a matter of logic, number one, all they really found was that it wasn't proven beyond a reasonable doubt. They could have thought it was 70-80% likely, and they correctly would have acquitted. And number two, they could have acquitted simply out of leniency. They said we're already hitting him for rape and kidnapping. Why do we need to do the gun as well? Sure, and Judge Boggs, you are correct that the jury verdict does not necessarily stand for the fact that – with absolute certainty that Mr. Wade did not have a gun. It does, however, stand for the fact that he did not have a gun beyond a reasonable doubt, and that is enough to trigger a stop on that particular case. But I think, Bishop Dennis, it seems as though Judge Sutton was saying that the fact that he didn't have a gun beyond a reasonable doubt doesn't mean that the jury couldn't take into account their view that he had a gun at the second trial. Well, combine the gun with other things in deciding notes. I mean, so the question is whether there's force beyond reasonable doubt. Sure. But you can use evidence of a gun and some other things together to show the force. Right. Isn't that where your limiting instruction would ask in? That's where the limiting instruction – I think that's where the fallback from the limiting instruction certainly does help because at a bare minimum, there needed to be an instruction telling the jury how to consider this firearm evidence. Because I don't – I think the court and I think even the state would be hard-pressed to say that it would – that it would comport with due – that it would comport with the constitutional motions of a fair trial to walk back in and assert that Mr. Wade committed a crime possessing a gun after a previous jury in this case said that he didn't. A limiting instruction would have cured that problem, but no such instruction was given. Let me ask you about – when you get to other courts that have done this, there's a case on either side that I saw cited called Clark v. Spencer in the First Circuit, 2009. I don't know if you or your adversary – and in that case, it's almost exactly the same facts. There was a trial. They found he did not have a gun when he kidnapped and raped the victim. There was reversal for other reasons. In the third trial, the court clearly said evidence that he used a gun was still relevant to explain how he was able to force the victim, compel her to submit, blah, blah, blah. I just wondered if that case had come to your attention. It seems to be factually very nearly on all fours. No, Judge Boggs. That case had not come to my attention. Go on. I just wanted to throw that out. We're not the first court at the appellate level to have considered something like this, and that's the closest one. There are a couple more where other courts basically take the position that Judge Sutton was laying out that it remains relevant evidence, which, of course, is the language used in Dowling. And I assume at this point we're going back to the actual question, yes? Yeah. Okay. You can do that, or you can go to Judge Strange's question of, okay, maybe that's a good reason to talk about instructional error, but in doing so, just work through the procedural defaults and all that other stuff. Absolutely. Now, if I may, there are two very quick points I'd like to make regarding the first jury that I think complete an answer to your question. And that is that to the extent that the court – excuse me – that the state in the first trial relies solely on the firearm evidence, you have two disparate verdicts coming from that jury. We have something of a split verdict, and it's a very well-established principle that we don't try to rationalize the split verdict. Absent clear arbitrariness by the jury, they're presumed to be able to do whatever they would like. Now, Judge Strange, going back to the limiting instruction, I don't think that there's much of an argument regarding the substance of the underlying case, but there certainly is a dispute regarding whether – regarding the procedural default. And Judge Sutton, I would like to walk through and show how exactly – where we think in the record all of this is settled. Now, Coleman itself, two elements – cause and prejudice. And to establish our cause under Coleman, we have two subsidiary strickling claims. Those are separate claims. We recognize that. But they are tied together, and I think they largely hinge on whether – they largely hinge on trial counsel's performance, whether or not he was ineffective. And that issue can be distilled down to a single, very simple question. Is there an objectively defensible reason for trial counsel to request a limiting instruction on the rape charge but not the kidnapping charge? And the answer to that question is pretty clearly no. The reason that trial counsel requested a limiting instruction on the rape charge was because he was concerned that the state was trying to convict Mr. Way of kidnapping by arguing that he possessed a gun in order to establish force. The exact same argument applies to kidnapping with equal, if not greater, force. We're discussing the same prejudicial evidence, the same legal definition of force, and the same surrounding circumstances. Your Honor, there's nothing – there's no point of law or fact in this record that would explain from a tactical standpoint why he would speak up on rape but not kidnap. And I think that's all the more true and perhaps all the more troubling given the constitutional significance of a foregone objection. As we point out in our reply brief, the basic point of Strickland is to ensure that defendants receive a fair trial. And that was the whole point of this claim, that the defendant could not receive a fair trial with unfettered consideration of the firearm evidence. Given that, it's just something of an inexplicable oversight. Now, out of curiosity, if you either find your right procedural defaults excused or you say to yourself, boy, that's a lot of trouble. Let's just go to the merits. Either way, do the merits get at the deference of your underlying question? They do not because there is no adjudication on the merits of that issue, and I think 2254d itself is fairly clear. In order for the deference to be triggered, you must seek relief on a claim that has been adjudicated on the merits. There was a merits adjudication in this case that was in our favor that was subsequently vacated. The current judgment that this court is reviewing is purely procedural in nature. And as we had discussed in our – we had sent some 28 take-a-letters this past week. As we had discussed, cases coming out of the Supreme Court recently, specifically Harrington v. Richter and Cohen v. Penhall, to draw a very clear line in the sand between adjudications that are substantive and adjudications that are procedural. Or we're getting at the deference, the latter are subject to procedural default. If you clear the procedural default, we go back and we assess the claim. Okay. How about – so maybe you kind of answered this question. So would you say the prejudice inquiry and the procedural default – so you may have so-called prejudices that stand prejudice? Yes. How different would you say that prejudice inquiry is from the assessment of the merits itself? Would you say it's the same? Because you just said you don't think it gets at the deference. Would you say it's really the same question? I'm not sure if it would be the same question, but I think whatever that – Can you explain why? I'm just curious. I don't know the answer to this. I'm just curious. Is it essentially the same question? Well, I think whatever that question is, Your Honor, I think you cleared it here for the simple fact that we have a very clear situation where we have a – I'm really confident you were going to say you cleared it, but I just want to know how they're different. Because I'm starting to wonder if they're exactly the same, particularly if, as you say, the merits inquiry doesn't get at the deference. Isn't that just the same question? To an extent, I think it could be. Now, if I – I'm trying to understand your question. So procedural default, you have ineffective assistance, so the counsel behaved reasonably and not asking for the woman's instruction. And then if that was true, you'd have to show prejudice in the case, right? So if you clear that hurdle, that allows you to pierce procedural default and get to the merits. So all I'm asking you is, is the merits question and the prejudice question the same? And I'm not saying this because I know the answer. I'm just trying to sort it out in my head. Maybe the government can help us. Sure, and I think the answer to that is – I'm not – We're on the same page. I did have a question. As – I'm looking at Wave 4, and perhaps part of the answer to the question that Judge Sutton poses has to do with whether Wave 4 is in fact a procedural determination because it's made on the basis of a harmless error resolution, a harmless error review. Right. And that's a procedural issue, correct? That is a procedural question, and there is a case law on point saying that – I believe that's called a Birmingham motion in Ohio that that is – I'm not sure. But that is very much a procedural determination. If it's a procedural determination, then don't we step over into a limiting instruction issue? And isn't – I guess my question is, much of your discussion of limiting instruction tends to speak in terms of other acts of prejudice. Why isn't the limiting instruction an issue just simply in double jeopardy? Because think of – think of the constitutional cases, Bodie v. California in 1990 in the Supreme Court, Stromberger v. California in 1931. In both of those, the issue that's going on is whether you are presenting to the jury the opportunity to convict someone unconstitutionally on something that they have already been acquitted on. So doesn't the law – these – this principle require you to say to the jury, I'm giving you a limited instruction because if you are going to convict this gentleman on the basis of the gun evidence, that's an unconstitutional conviction. So I have to warn you, there may be two ways. You may be able to say force was there, blocking the door was there, size was there, but the other arm of that is that it's necessary, is it not, to inform the jury that there's an unconstitutional methodology and a constitutional one. And if we don't inform them of that, doesn't Bodie say to you that – and Stromberger – say to you that if there is any possibility that the jury convicts on an unconstitutional ground, then that theory requires that the conviction be set aside? I think that's exactly right, Judge Strange, and that was precisely the logic that the Ohio Court of Appeals offered in Wave 2. I'm sorry? Before they changed their mind. Before they changed their mind. I do have one final question. Yes, Judge. You did get the limiting instruction on rape, right? No, we did not. It was denied. But you got what was on kidnapping? It was denied outright. It was denied outright. I'm sorry. And that's why the rape conviction was reversed. That's why everything is reversed. But he pled, so you now had the opportunity to resolve the issue. He pled to rape. He pled to rape, and it's been conserved. Thank you. We'll give you two minutes for rebuttal. May it please the court. I'm Bill Lamb. I represent the warden in this case. There are two things I want to do at the outset. First, for administrative purposes, I want to be quite clear about what parts of the state record are entitled to habeas deference, so we're clear about that. And then rather than going through my argument, I want to directly talk about Judge Strange's question, which I think is an interesting question. It may be helpful in going back to the record and discussing a little bit about what was in the record. But first, the habeas deference as to Claim 1 is found in paragraphs 10, 13, and 20, HIDs 349, 351, and 354 in the Wade 2 decision as to answering perhaps a question. Is that, forgive me for not remembering exactly what was on those pages and paragraphs, but is that a plein air analysis? No, that's the second one. This one has to do with the Ash v. Swenson argument in Wade 2. Okay, so how about the habeas deference as to instructional error? Because the one thing I was wondering about is I think there are some cases that say you do have habeas deference when there's a plain air analysis by the state courts because, of course, problem 1 of plain air is whether there's an error. Yes, and the supplemental citation that I provided for Fleming v. Matrish in this circuit as to Claim 2 would say that a plain air review is an adjudication of the merits. And there's some discussion of that between counsel and me on whether Fleming v. Matrish applies or not. Is that your view, or what's your position on this point? My position is that as to Claim 2, there was a habeas deference because of Fleming v. Matrish. And the habeas deference to Claim 2 comes out in the reconsideration decision on page ID 641 and 642, especially paragraph 7, page ID 642. And that may lead into— And so that would show that the prejudice inquiry on ineffective assistance to get to the procedural cost of procedural default is different from the merits inquiry. Actually, they appear to be linked because in paragraph 7, the state court held, Therefore, the court could not conclude that the outcome of the kidnapping conviction would have been different but for a limiting instruction. Which does make the two ideas, if you were suggesting in your questions to counsel— So what's your take on the idea as to the second claim, just saying, well, we really aren't forgetting the procedural— Exactly. —default issues. If it's a deference on the underlying question, why don't you just leap to it and deal with it? As I was trying to do, to identify where the habeas deference comes from in the record. But it does apply—it's an interesting question—it does apply to the prejudice problem for the procedural default as well. And the third place, the third and last place where the habeas deference— Give me a—just real quickly, what's a citation for that point? Prejudice, prong, strickling. Habeas deference applies to that. I'm sure you're right, but I just didn't know that. No, I'm not sure I'm right. As a matter of fact, there's some dispute between the appellate and me on that subject. Which do you feel a little more strongly about, epideference as to the underlying merits or epideference as to prejudice, prong, and strickling? I like the underlying merits. Now, I'm not conceding— That's what I would have thought. I'm not going to concede that there's not procedural default, but it seems to me we can cut to the chase and go right to the merits. You've answered my questions. Thanks. But I'm not conceding the procedural default issue. As an aside, I should point out that I noticed in the reply brief from the appellant, he cited cases from this circuit, and I believe one case from the Third Circuit that held that in reviewing for cause, the standard of review is de novo. And that caused me to go back to look at some of the secondary sources, and what I cite in my brief, a secondary source that everybody uses, the Federal Habeas Manual. And just for the course information, it appears from that secondary source there may be a split in the circuits, between the Seventh and Fourth Circuit, and this in the Third Circuit. The Third Circuit cited in the appellant's reply brief on the question of whether for cause is reviewed de novo or under the epidefferent standard. I would argue that we don't even have to go there, however, to decide this case correctly on the merits and apply habeas deference to both claims one and two, as I've outlined it, and I will argue further. If I have the time, I'd like to argue that further. If I may, though, I would like to go to Jeff Stranshew's question, which is an excellent question, and I hope I can help the Court by talking a little bit about the record itself. As I read the record, the question of the limiting instruction came up toward the end of the party's discussion about the admissibility of evidence, and it was just thrown in there in a couple of pages. There was no limiting instruction specifically offered by the defense, so we don't know what the limiting instruction as to kidnapping would have been. We do know, however, how the trial court instructed the jury on kidnapping, and as I recall, HID 2188, the trial court instructed the jury on kidnapping as to both two sections of the kidnapping statute. A2 is the, I forget the exact language, but it has to do with commission of a felony, a flavor of kidnapping, and A4 has to do with the sexual conduct aspect of kidnapping. The jury were instructed on both those sections, A2 and A4, so that if hypothetically, let us suppose, the defense did have a limiting instruction or requested a limiting instruction as to kidnapping, that instruction would have to deal with both sections. Now, as I mentioned in my brief, the drama of this case came up from waves of, I don't know, false testimony, elaborate false testimony that the sex here was consensual. I think it was a bit guilty later, and I'd like to talk about that too. The last thing I think the defense counsel would have wanted to emphasize was the A2 section of the kidnapping statute, which talks about the other felonies, namely the taking of the cell phone, the laptop, the car keys, and the car. Because how do you explain that? He doesn't want to talk about that. It's just, if I may say, looking at this as a prosecutor would look at it, what's he going to argue, that the sex was consensual? Oh, by the way, it was so great, well, here, take my car, take my car keys, take my cell phone, take my laptop. He just doesn't want to go there. So, if he did request a limiting instruction for kidnapping, that might raise all these other things that detract from the drama of his client's testimony, which was limited to consensual sex. Counsel, with regard to the requested limiting instruction, you say there was not a piece of paper that says this is the instruction we want, that all we have is the transcript, is that correct? As I read the transcript, this was thrown in, he requested a limiting instruction in two places. The quote that I have from the, and Mr. Berlinger can enlighten me if I'm missing something, the transcript of I.D. 1950 says that he asked that the instruction, that the jury be instructed that they can't find Wade guilty of possessing a deadly weapon for the force that's used in rape. But, of course, they weren't asked to find him guilty of possessing the weapon, right? It was not a firearm specification, because that was knocked out in the first trial. It was indeed. So, in fact, if he had gotten an instruction that said, you can't find him guilty of possessing a deadly weapon, that would either be confusing or simply irrelevant, because they weren't being asked to find him guilty. Is that a fair reading? I guess I would think so, yes, sir. Here's what I'm struggling with. It's confusing to me. Sorry, go ahead, I'm sorry. Here's what I'm struggling with, and perhaps you can educate me. It seems like, by looking at the record of the trial, that the gun played a very large role in the prosecution's case. You know, you look at the closing argument. It's talking about she wanted to leave, but for the fact that he was standing there with a gun in his hand. And the victim's testimony, that he pulled out a silver gun and told me to back up, and I wouldn't have complied so much without the gun. And I know that there's impeachment back and forth. And I understand your other arguments. I'm just struggling with getting to the point that you've got this evidence presented at the second trial that pretty clearly hinges the presentation on the presence of the gun. So help me again understand why, in that circumstance, we don't have a double jeopardy problem if there is not some sort of limiting instruction that indicates that there is a constitutional method that this jury may consider and an unconstitutional method that they may consider. Because if we don't tell them that, based on the argument that was presented by the prosecution, isn't it pretty practical to assume that he was convicted because he was holding a gun? I have two responses to that. One is in my brief, and I'm not sure if the other one is. The response to my brief is that the jury, of course, can decide a case based upon the evidence. They can take some part of the evidence, not any other part of the evidence, and they're not limited to the prosecution's case. I won't re-argue that. I understand that. Assuming that they know what's prescribed. Yes. But the state court did deal with that, and they reversed the conviction based upon that question. And then thereafter, on reconsideration, on the kidnapping, they recited all these facts that you mentioned before to come to a contrary conclusion as to the kidnapping. That's the best answer I had on it. They dealt with it as best they could. Wade later pleads guilty. And may I go to that question right now about Wade's guilty plea, if you don't mind? I know this is a habeas case, and the appellant makes the correct observation that the guilty plea occurred after the state court decisions in this case, therefore it's not really part of the habeas case. But as a matter of, if I may say, simple truth, you have to think about how does that guilty plea play into the case? And when Wade pled guilty to rape, is he not admitting some of the essential facts that are presumed, namely that he pushed his way through the front door, stood between the victim and the front door, blocking the victim's exit? So the circumstances of the rape, and this, by the way, is at page ID 642, paragraph 7, the circumstances of the rape, the Ohio court is telling us, if he admits to the rape and those facts, also constitute kidnapping. So I don't know what you do with that as a matter of habeas review, but it's a troubling aspect of this case. And I submit that the court should consider it. So just what you're saying, I didn't realize this, so the plea lays out the theory of the rape, or you're just lining up the indictment to the plea, is that what you're doing? I'm saying that, unfortunately, the record doesn't have the transcript of the guilty plea. Well, oddly enough, he could have been pleading guilty to having the gun, we don't know. Is that ironic? Yes. The word is allowed to be silent about it. There's no counsel in that state. The words you were reading were from the Ohio Court of Appeals opinion? Yes, Your Honor. And note they're saying, that's page ID 642. It's a troubling aspect of the case. He can say it in his head for whatever reason. I mean, it's the same problem with reading any jury verdicts. My judge is definitely explaining what you're doing. However, here in a habeas case, we have certain presumed facts, admitted facts, in the section you want of the habeas statute. And so if these are the facts that Wade is admitting to when he pleads guilty to rape, namely that he pushes Wade through the front door, stands between the victim and the front door, blocking the victim's exit. And oh, by the way, he's big in head, and she's slightly tall. Are you saying the transcript doesn't exist? It was not. The sentencing, excuse me, the guilty plea transcript was not filed, as far as I know. I can't find it now. Okay, because normally, if you're right, it's not in our record. I'm looking for factual circumstances. You're saying it's not in our record. I was thinking the same thing. I was looking for it precisely because I wanted to find that recitation of factual circumstances, but I couldn't find that in this record. If you don't have it, you don't have it. If you want it, I would, of course, try to find it and provide it later. So there are a number of other arms and legs to this case that I won't have time to get into. Let me do mention, though, one very quick context error that came up in Wade's brief that I thought was worthy of notice. Wade says in his brief that, somewhere in his brief, that the state used the gun testimony to prove Wade used force. This is a context error. Actually, the court at that stage was talking about the second claim, not the first claim, and in the very next paragraph, the state court said, although collateral estoppel did not prohibit the admission of testimony indicating he possessed a gun, and so on, the principle underlined that it requires a limiting instruction. So he's confusing claims one and claim two. Finally, my last comment is, coming back to claim one, the double jeopardy claim, which I think the court has done a very excellent job of distinguishing the ultimate fact in Nash versus Swinson, which was identity and nothing else, and the ultimate fact here, which was force with all these other subsidiary facts. Another thing to consider is, if you were to adopt the appellant's view of Nash versus Swinson and eliminate Dowling and everything that came after Nash versus Swinson, it'd be very hard to have a retrial in a rape case, which you typically have one victim and you typically have one perpetrator, and if you say that any part of that falls out, you can't have a retrial thereafter, it would seem to me, and that's a very dangerous way to justify the retrials in every case like rape if you adopt their interpretation of Nash versus Swinson. Thank you. We're looking at a few minutes for a vote. Thank you. Three very quick points. This goes to several comments made by my adversary, but I want to make very clear that it is not our position that a retrial is blocked. It is not our position that Mr. Wade necessarily should have been acquitted. In fact, one of the major problems in this case is that once you take out the gun evidence, this record at best is a toss-up, and that's precisely why it was absolutely imperative to make sure that we had a fair trial and to make sure that we had that limiting instruction so that we could tell the jury what was constitutional and what was not. At the bottom, is it that the victim had to censor her testimony when she said he came in and he... Objection. I can't say he had a gun. No. That's not our position. I will accept that under the Ohio rules of evidence that this testimony could have been presented because it's inextricably intertwined with her memory. But then, the part that we just asked about was what's in the transcript about the instruction he wanted to the extent that did he say anything beyond what I quoted? We want an instruction that says you can't convict him on the gun charge. That is the relevant... He had a sign of guilty of possessing a deadly weapon, but they didn't ask him to convict him of possessing a deadly weapon. And I think that goes back... That is a correct reading of the transcript, Judge Box, and I think that goes back down to the question of what precisely the state was asking through its presentation of evidence. I think the limiting instruction was meant to ensure that the gun testimony was kept in the constitutional box where it was supposed to be, and that was for some other purpose other than convicting him of a commutation. Do you have a quick response to his argument that a plain-air decision by a state court gets extra deference on the issue? Trish, what's the case he cited? If you have a competing citation, do you have an argument on that? Well, I think that  of Section 314 is very clear on this point that it has to be an adjudication on the merits. So Trish is just wrong? For want of a better way of putting it, I would say that's the case and I think particularly so after Penholster and Richter. Thank you, counsel. Submitted. I appreciate you taking the space out of the Criminal Justice Act as a worthy service for our system of justice. Thank you, Judge. I'm going to say that it's your usual phrase.